# In the United States District Court for the Southern District of Georgia Savannah Division

UNITED STATES OF AMERICA,

v.

JOSHUA SCOTT and VICTOR NATSON,

    Defendants.

NO: 4:17-CR-50

## ORDER

Before the Court are Defendant Victor Natson's Motion for a New Trial, dkt. no. 201, and Motion for Acquittal, dkt. no. 202. The Government responded in opposition. Dkt. No. 210.

For the following reasons, the Motion for a New Trial and the Motion for Acquittal are **DENIED**.

## BACKGROUND

Gregory Plair, Victor Natson, and Joshua Scott were charged with conspiracy to commit armed robbery, two counts of armed robbery of a Brinks truck, as well as two counts of using and carrying firearms in relation to a crime of violence. Gregory Plair entered a plea of guilty and became a key witness in the trial of Natson and Scott. Following a four-day trial, the jury determined that both Defendants Natson and Scott had been involved in at least one of the two underlying robberies. The jury

convicted Natson of all the charges against him in the indictment—i.e., one count of conspiracy to interfere with interstate commerce by robbery in violation of 18 U.S.C. § 1951(a); two counts of interference with interstate commerce by robbery in violation of 18 U.S.C. §§ 1951(a) & 2; and two counts of using and carrying firearms during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c) & 2. Dkt. Nos. 42; 196. In making such a finding, the jury determined that Natson was involved in the two armed robberies (both October 14, 2016, and January 30, 2017).

Natson now makes two motions to the Court. The first is for a new trial. Dkt. No. 201. The second is for a judgment of acquittal. Dkt. No. 202.

## **LEGAL STANDARD**

"[T]he court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. Pro. 33(a). Whether to grant a new trial is left to the sound discretion of the trial court, and denial of a motion for a new trial can only be reversed upon an abuse of discretion. United States v. Champion, 813 F.2d 1154, 1170 (11th Cir. 1987). A new trial is only appropriate where the evidence "preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." Butcher v. United States, 368 F.3d 1290, 1297 (11th Cir 2004) (citation omitted). Motions requesting a new trial are thus viewed with "great caution"; they are not a

AO 72A
(Rev. 8/82)

vehicle by which a Court may "reweigh the evidence or set aside the verdict simply because it feels some other result would be more reasonable." United States v. Hall, 854 F.2d 1269, 1271 (11th Cir. 1988) (quoting Bentley v. United States, 701 F.2d 897, 898 (11th Cir. 1983)); Butcher v. United States, 368 F.3d 1290, 1297 (11th Cir. 2004) (citation omitted).

The Court must enter a judgment of acquittal where the evidence presented by the Government "is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In viewing a motion for a judgment of acquittal, the Court is tasked with "test[ing] the sufficiency of the evidence against a defendant, and avoid[ing] the risk that a jury may capriciously find him guilty though there is no legally sufficient evidence of guilt." United States v. Collantes, 2011 WL 2784266, at *4 (S.D. Fla. July 13, 2011) (citation omitted). The Court "should apply the same standard used in reviewing the sufficiency of the evidence to sustain a conviction." United States v. Ward, 197 F.3d 1076, 1079 (11th Cir. 1999). It is this Court's duty, therefore, to "view the evidence in the light most favorable to the government, and determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. Miranda, 425 F.3d 953, 955 (11th Cir. 2005).

AO 72A
(Rev. 8/82)

3

**DISCUSSION**

**I. Natson is not Entitled to a New Trial**

Natson argues he is entitled to a new trial for two reasons. First, because cell-site location information ("CSLI") from his cellphone was acquired in violation of the Fourth Amendment and then admitted at trial. And second, because data extracted from Gregory Plair's cellphone constituted co-conspirator hearsay evidence which was improperly admitted, over objection, pursuant to Federal Rules of Evidence 801(d)(2)(E). Dkt. No. 201 at 1. Both arguments fail.

The Court may only grant a new trial where the evidence presented at trial "preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." United States v. Martinez, 763 F.2d 1297, 1313 (11th Cir. 1985). Such a remedy is "not favored" and is granted "sparingly and with caution . . . in the really exceptional cases." United States v. Gil, 581 F. App'x 766, 775 (11th Cir. 2014) (quoting United States v. Martinez, 763 F.2d 1297, 1313 (11th Cir. 1985)).

**A. Natson's Cell Location Data was Obtained in Good Faith**

After Natson's trial and conviction, the Supreme Court issued an opinion holding that "the Government must generally obtain a warrant supported by probable cause before acquiring" cell-site location information ("CSLI"). Carpenter v. United States, 585 U.S. \_\_, 138 S. Ct. 2206, 2221 (2018). Here, the Government did

AO 72A
(Rev. 8/82)

not obtain a warrant before it acquired the CSLI from Natson's phone and subsequently used that information in its case in chief. Instead, the Government obtained a 2703(d) order from a United States Magistrate Judge that permitted the Government to acquire Natson's CSLI. The 2703(d) order only required the Government to show "articulable facts showing that there [were] reasonable grounds to believe that . . . [the CSLI was] relevant and material to an ongoing criminal investigation," 18 U.S.C. § 2703(d); a warrant requires a higher showing by the government, i.e., probable cause. Thus, under Carpenter, the Government performed an unconstitutional search when it acquired Natson's CSLI without a warrant. Nevertheless, the CSLI was still admissible at trial because the CSLI was acquired by the government in good faith, making the good faith exception from United States v. Leon applicable. See United States v. Leon, 468 U.S. 897, 919-21 (1984).

The United States' acquisition of Natson's CSLI fits within the Leon good faith doctrine as the Eleventh Circuit has recently held. See United States v. Joyner, 899 F.3d 1199, 1204-05 (11th Cir. 2018). In 2015, the Eleventh Circuit "held that a § 2703(d) [Stored Communications Act] order allowing government access to a cellular provider's records 'comports with applicable Fourth Amendment principles and is not constitutionally unreasonable.'" Id. at 1204 (quoting United States v. Davis, 785 F.3d 498, 518

(11th Cir. 2015) (en banc)). Here, the Government's § 2703(d) request was signed by a United States Magistrate Judge in August 2017, two years after Davis and about eleven months before Carpenter. Thus, when the Government acquired the CSLI at issue, it was acting under a good faith belief that the acquisition was constitutional. In Joyner, the Eleventh Circuit held under materially indistinguishable facts that the Government acted in good faith and thus that "the Leon exception to the warrant requirement" applied. 899 F.3d at 1205 (citing United States v. Leon, 468 U.S. 897, 919-21 (1984)). The Court is constrained by Joyner and must find the Leon exception applicable to the Government's acquisition of Natson's CSLI because the Government "complied with the requirements of [§ 2703(d)] in obtaining the orders to compel cell site records, and when they did so in [August 2017], that warrantless procedure was, under [Eleventh Circuit] precedent, within the bounds of the Fourth Amendment." Id.

**B. The Court did not Err in Admitting Exhibit 30.**

Exhibit 30 is a table titled "Communications Pulled from Plair Phone Report Between Plair, Natson, Scott." The table lists the date, time, and phone numbers that were connected to Plair's phone. The table classifies a connection as a call log or a SMS message. In the case of a call log, the table specifies the duration of a call; in the case of a SMS message, the table includes the content of the message.

Natson argues that Exhibit 30 contains hearsay. Most of the Exhibit does not contain hearsay, for two reasons. First, information of the date, time, connected phone numbers, and categorization of the communication does not satisfy the definition of hearsay under Federal Rule of Evidence 801(c). Rule 801(c) requires "hearsay" to be a "statement," which is defined as "a person's oral assertion, written assertion or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a). Because the date, time, connected phone numbers, and categorization of the communication are not "statements" within the meaning of Rule 801(a), they are also not "hearsay" within the meaning of Rule 801(c). See United States v. Lamons, 532 F.3d 1251, 1262-64 (11th Cir. 2008) (finding that call data showing date, time, and connected phone numbers are "statements of machines, not statements of persons," therefore not "statements" under Fed. R. Evid. 801(a)). Second, statements made by an opposing party and offered against that party are not hearsay. Fed. R. Evid. 801(d)(2)(A). As such, the content of messages sent from Natson to Plair and offered against Natson, fall outside Rule 801's definition of hearsay and were therefore admissible.

The remaining category of information in Exhibit 30 were messages from Plair to Scott and Natson. These messages were all admissible under the co-conspirator statements hearsay exception. Rule 801(d) excludes from its definition of hearsay statements

"offered against an opposing party and . . . made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). For evidence to be admissible under Rule 801(d)(2)(E), "the government must prove by a preponderance of the evidence that: (1) a conspiracy existed; (2) the conspiracy included the declarant and the defendant against whom the statement is offered; and (3) the statement was made during the course and in furtherance of the conspiracy." United States v. Harris, 886 F.3d 1120, 1130 (11th Cir. 2018).

For the remaining messages, the Government has met its burden on all three of these requirements. Plair testified that both Natson and Scott were involved in the October 2016 robbery and the January 2017 attempted robbery. Plair testified that Natson reached out to Plair about robbing a Brinks truck, that Plair was reluctant to join Natson, that Natson persistently contacted Plair about joining Natson, and that Plair eventually agreed to do the robbery. Plair also testified that he brought Scott into the robbery plans. Like Plair, Scott was reluctant to join until he could trust Natson. Natson and Plair had many meetings with Scott at the residence where Scott was living, and Scott eventually agreed to join. Then the three planned the first robbery over many more meetings and scouting trips. Natson dropped off Scott and Plair near the Suntrust for the first robbery, and Natson picked them both up after the robbery. Plair further testified

that after the first robbery, he and Natson began talking about doing another robbery. Plair then approached Scott who ultimately agreed to do another robbery with Plair and Natson. Natson again supplied information regarding who would be driving the Brinks truck, the truck's route, and other information to help plan the robbery. This testimony established that a conspiracy existed and that the conspiracy included Plair and Natson, i.e., the declarant and the defendant against whom the statement was offered, respectively.

Thus, the remaining issue is whether the statements were made during the course of and in furtherance of the conspiracy. They were. First, the Eleventh Circuit "applies a liberal standard in determining whether a statement is made in furtherance of a conspiracy." United States v. Santiago, 837 F.2d 1545, 1549 (11th Cir. 1988). The statements from Plair contained in Exhibit 30 meet this liberal standard. Plair testified how he tried to sell Natson the gun he used in the first robbery. Plair testified that he texted Scott to "do homework" on the Suntrust location. Plair testified that he later texted Scott about a "banga," which meant the gun Scott used in the second robbery. In short, the SMS messages sent by Plair and used at trial directly related to the conspiracy.

Notably, Natson has not pointed to any specific messages that fail to satisfy the "in furtherance of" requirement. Instead,

Natson asserts that the Government's failure to present Exhibits 60 and 61 at trial made the Court's preliminary determination regarding the admissibility of Exhibit 30 improper. Even without the admission of these exhibits, the Government presented sufficient evidence to satisfy the three prongs of the co-conspirator hearsay exception. Natson has not shown why these two exhibits were "key pieces of evidence" as he alleges, nor that the Government failed to satisfy any of the three prongs of the exception.

### C. Even if Some of the Messages in Exhibit 30 were Admitted in Error, the Error did not Substantially Influence the Outcome of the Trial

Natson alleges that an evidentiary error occurred. When considering a motion for a new trial based on an alleged evidentiary error, the Court will only order a new trial where "a significant possibility exists that, considering the other evidence presented by both the prosecution and the defense, [the error] has a substantial impact upon the verdict of the jury." United States v. Riley, 434 F. App'x 818, 821 (11th Cir. 2011) (quoting United States v. Arbolaez, 450 F.3d 1283, 1290 (11th Cir. 2006)). But "where an error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict, reversal is not warranted." Id.

AO 72A
(Rev. 8/82)

10

Given the substantial evidence of Natson's guilt, excluding the messages from Plair to Natson or to Scott, the admission of Exhibit 30 did not substantially influence the outcome of the trial. To give some context, Plair's testimony on direct and redirect examination consisted of sixty-five pages of transcript. He testified to messages contained in Exhibit 30 for only a small fraction of that extensive testimony.

In addition, the messages themselves were not very important to the overall impact of Plair's testimony. The messages consisted of: Plair trying to sell to Natson the nine-millimeter he used during the first robbery; Plair texting Scott about doing "homework" regarding scoping out the Suntrust; Plair and Scott messaging about a "banga" meaning a gun that was used in the second robbery; Plair texting Scott about a "glizzy" the other gun used in the second robbery; and Plair responding to a text from Natson about meeting at the barber shop. Looking at all of these messages, they did not "substantially influence" the outcome of the trial to a "significant possibility." Plair had already testified about the guns used and that he, Natson, and Scott met many times to discuss and plan the robberies. These messages simply did not add evidence to the Government's case in chief but merely corroborated to a non-significant extent other evidence. Accordingly, Natson's request for a new trial is due to be **DENIED**.

## II. Natson is not Entitled to a Judgment of Acquittal

In his motion for a judgment of acquittal, Natson argued that the evidence presented at trial was insufficient to sustain a conviction: because, according to Natson, the Government neither presented evidence that Natson was present at the crime scenes, nor that he "actively participated in the armed robberies of the Brinks employees." Dkt. No. 202 at 1. The motion focused in particular on Counts 3 and 6, which pertain to the use and carrying of firearms in relation to a crime of violence (in violation of 18 U.S.C. § 924(c)) and aiding and abetting (in violation of 18 U.S.C. § 2). Id. at 2. Comparing this case to United States v. Medina, Natson argues that insufficient evidence was presented in this case to show that he aided and abetted the use or carrying of a firearm. Id. (citing United States v. Medina, 32 F.2d 40 (2nd Cir. 1994)).

The Court has reviewed the evidence presented at trial and concludes that ample evidence supports the jury's decision to find Natson guilty of each of the charges within the indictment. The Government presented evidence at trial establishing Natson's guilt with respect to each of the five counts upon which he was convicted. It is no miscarriage of justice to allow such a verdict to stand. As such, Defendant's request for a judgment of acquittal is **DENIED**.

## **CONCLUSION**

After consideration of the arguments presented in Natson's Motion for a Judgment of Acquittal and Motion for a New Trial, the record developed in this case, and the relevant legal authorities, this Court **DENIES** both motions, based on the reasons explained in this Order and those articulated in the Government's Response Brief.

**SO ORDERED**, this 18th day of October, 2018.

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA